**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

| | | |
|---|---|---|
| **MIDDLESEX INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO.:** ___1:20-CV-037-SA-DAS |
| **COLUMBUS MUNICIPAL SCHOOL DISTRICT,** | § § § | |
| **Defendant.** | § § | |

**PETITION FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff Middlesex Insurance Company ("Middlesex") and, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, submits this Petition for Declaratory Judgment against Defendant Columbus Municipal School District ("CMSD"), and states as follows:

1.    This is an action for declaratory relief for the purpose of resolving an actual controversy concerning the availability and scope of insurance coverage under the insurance policy described below.

2.    This declaratory action arises out of a claim for insurance benefits under a commercial property insurance policy that Middlesex issued to CMSD.

**PARTIES**

3.    Plaintiff Middlesex is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Stevens Point, Wisconsin.

4.    Defendant CMSD is a governmental entity of the State of Mississippi, with its principal place of business in Columbus, Mississippi.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Middlesex and CMSD, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      Venue in the Northern District of Mississippi is proper pursuant to 28 U.S.C. § 1391(b) because CMSD is located in this District, the events giving rise to this litigation occurred in this District, and the property that is the subject of this litigation is located in this District.

**FACTUAL BACKGROUND**

**A.      The Policy.**

7.      Middlesex issued a commercial insurance policy to CMSD bearing policy number A0082774001, for the policy period July 1, 2018 to July 1, 2019 ("the Policy").

8.      The Policy provided coverage to CMSD for twenty different buildings at twelve different locations.

9.      The loss pertinent to this action occurred at property located at 916 20th Street North, Columbus, Mississippi 39701-3826. The Policy insured three buildings at this location:

| 7 | 1 | 916 20th St. N<br>Columbus, MS 39701-3826 |
| 7 | 2 | 916 20th St. N<br>Columbus, MS 39701-2826 |
| 7 | 3 | 916 20th St. N<br>Columbus, MS 39701-3826 |

10.      The Policy provided property coverage to the buildings and was subject to a single $110,048,370 Blanket Limit.

2

11. The Policy also provided extra expense coverage which was subject to a $100,000 per-building Indirect Loss Blanket Limit:

    **c.**    **Indirect Loss Blanket Limit**

        The Indirect Loss Blanket Limit shown in the Declarations applies separately to each building specifically described in the Declarations.

        At the time of the loss you may apportion the Indirect Loss Blanket Limit to any coverage subject to the limit, or to any combination of coverages subject to the limit. The total amount apportioned at a building may not exceed the Indirect Loss Blanket Limit.

        If a specific Limit of Insurance is shown in the Declarations for a coverage subject to the Indirect Loss Blanket Limit, the specific limit applies in addition to any amount apportioned under the Indirect Loss Blanket Limit

12. The "Indirect Loss Blanket Limit" applied on a per-building basis:

**Special Broadened Property Coverage Endorsement**

| | | |
|---|---|---|
| Direct Loss Blanket Limit | $250,000 | Per building per occurrence |
| Indirect Loss Blanket Limit | $100,000 | Per building per occurrence |
| Crime Loss Blanket Limit | $ 50,000 | Per occurrence |

13. The Policy contained a $10,000 deductible.

14. The Policy provided coverage to CMSD as follows:

    **A.**    **Coverage**

        We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

15. "Covered Property" only included buildings or structures set out in the Declarations:

    **1.**    **Covered Property**

3

Covered Property, as used in this Coverage Part, means the type of property described in this section **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. **Building**, meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;
**(2)** Fixtures, including outdoor fixtures;
**(3)** Permanently installed:
   **(a)** Machinery; and
   **(b)** Equipment;
**(4)** Personal Property owned by you that is used to maintain or service the building or structure or its premises, including:
   **(a)** Fire-extinguishing equipment;
   **(b)** Outdoor furniture;
   **(c)** Floor Coverings; and
   **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering;

16. However, the Policy contained certain conditions all of which have to be met for the policy to afford coverage:

**3.** **Duties In The Event of Loss Or Damage**
   a. You must see that the following are done in the event of loss or damage to Covered Property:
      **(1)** Notify the policy is a law may have been broken;
      **(2)** Give us prompt notice of the loss or damage. include a description of the property involved;
      **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.
      **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

4

**(5)** At our request, give us complete inventories of damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation and settlement of the claim.

17. These "Duties In The Event Of Loss Or Damage" included a requirement that CMSD provide documents and information requested by Middlesex to support the claim and to provide a signed, sworn proof of loss and cooperating with Middlesex in the investigation of the claim.

**B.    The Claim.**

18. On February 23, 2019, a tornado damaged four buildings, all of which were located at 916 20th Street North, Columbus, MS 39701-3826.

19. CMSD sought coverage for all four buildings; however, only three of the buildings were listed on the Policy.

20. Of the three buildings listed on the Policy, one of them housed CMSD's Hunt Alternative School ("HAS Building"), while the other two were used exclusively for storage.

21. CMSD also seeks coverage for a fourth building that was also at the 20th Street location, which was being used as a museum and cultural center ("the Museum Building"); however, that building was not listed on the Policy.

5

22.     CMSD submitted a claim for insurance benefits to Middlesex for all four buildings as a result of the storm and resultant damage.

23.     After receiving the claim, Middlesex began its investigation and adjustment.

24.     In March of 2019, Middlesex provided CMSD with estimates from its building consultant, DE General. Those estimates determined both the combined replacement cost value ("RCV") and, subtracting recoverable depreciation, the actual cash value ("ACV") of the physical damages to the three buildings listed on the Policy.

25.     On March 7, 2019, Middlesex informed CMSD that the Museum Building was not covered under the Policy.

26.     On April 5, 2019, Middlesex provided CMSD with a blank proof of loss form to be completed as part of the claim. With it, Middlesex also requested that CMSD provide documentation to support its damage claim along with the signed sworn proof of loss. Specifically, Middlesex requested itemized estimates to repair or replace Covered Property; reports prepared by architects and engineers; receipts or invoices for amounts expended for emergency services or anything else being claimed; and an itemized inventory of damaged Business Personal Property, which was to include quantities, values, and the amount of loss.

27.     On June 13, 2019, CMSD provided Middlesex with its signed, sworn proof of loss (the "POL"). Through the POL, CMSD sought coverage for all four buildings, including the three buildings listed in the Policy, as well as the Museum Building that was not listed in the Policy:

3.    **Title and Interest:** At the time of the loss, the interest of your insured in the property described therein was: _____
                                        owned by CMSD
_____

No other person or persons has another interest therein or encumbrance thereon except: Hunt Museum, Inc. (non-profit) leased museum building

28. Through the POL, CMSD claimed damages well in excess of Middlesex's estimates:

| (FULL REPLACEMENT COST FIGURES TO BE INSERTED ONLY WHEN CONSIDERED IN THE ADJUSTMENT) | FULL REPLACEMENT COST | ACTUAL CASH VALUE |
|---|---|---|
| 6. The value of said property at the time of loss was .............. | $ 13,500,000.00 | $ unknown |
| 7. The whole loss and damage was ............................ | $ 14,110,936.85 | $ unknown |

8. The amount (less Deductible of $ 10,000.00 ) claimed under this policy is $ 14,110,937 (estimate)

29. Despite Middlesex's requests for detailed estimates supporting the building claims made in the POL, to date, CMSD has only provided Middlesex with a single, a one-page document generated by its architect, Modern Design Systems ("MDS"), identified as "Hunt Alternative School - Preliminary Estimate." The estimate is one page and simply calculated the project costs on a per-square foot basis providing no itemization or detail nor an explanation of the scope of the proposed repairs. In addition the Preliminary Estimate contained significant unexplained demolition costs and unexplained architect and engineer fees and contingencies totaling $1,318,747. The MDS Preliminary Estimate estimates to total cost of the project to be $13,500,000.

30. CMSD's POL claims $14,110,937 in total damages. Of that amount, $14,071,460.92 applies to the buildings. Based on inspection, Middlesex determined that the combined RCV of the damage to the three buildings listed in the Policy is $4,833,198.21. Subtracting the recoverable depreciation amount of $1,560,751.01 ("Depreciation Holdback amount"), Middlesex also determined that the combined ACV of the damage to the three buildings listed on the Policy was $3,272,447.20. Pursuant to the terms of the Policy, Middlesex has issued payments for the ACV of

the damages in that amount[1]. The difference between the amount CMSD claims in the POL for building damage and Middlesex's RCV damage amount is $9,230,721.79.

31.     On June 21, 2019, Middlesex acknowledged receipt of the POL. However, in response, Middlesex requested that CMSD provide documentation to support the claimed damage amount in the POL, including:

- additional information on the Business Personal Property claim;

- copies of any reports generated by any architects or engineers relating the damage, which were originally requested in April;

- a detailed explanation as to why a preliminary estimate included demolition of the main building;

- information explaining the allocation of $1,318,747 in architect and engineer fees and contingencies;

- any work proposals that were received in response to the MDS estimate; and

- any estimates created by CMSD's architects.

32.     The information and documents requested were material and necessary for Middlesex to evaluate CMSD's claim in the POL, especially in light of the discrepancy between CMSD's claim and Middlesex's estimate.

33.     In the June 21 letter, Middlesex again confirmed that the Museum Building was not covered under the Policy.

34.     In response to Middlesex's request, CMSD provided the following:

---

[1]Middlesex has estimated the RCV of the damage to the three buildings listed in the Policy, but has only paid the ACV to date. However, if CMSD incurs repair costs in completing repairs to the damaged property beyond the ACV amount, Middlesex recognizes that CMSD can seek to recover those additional incurred repair costs from the Depreciation Holdback amount. However, CMSD is only entitled to the withheld depreciation if repairs are completed, and is not entitled to any additional payments beyond the Depreciation Holdback amount.

8

- the AIA Standard Form of Agreement between CMSD and Weathers Construction, Inc.;

- two emergency services proposals from building contractors;

- invoices from MDS; and

- certain business personal property documentation.

35.     However, CMSD did not provide Middlesex with any information in the categories previously requested, including:

- complete information regarding its Business Personal Property claim;

- any explanation supporting the claim that complete demolition was required;

- an allocation of the architect and engineer costs;

- any work proposals received based on the MDS Preliminary Estimate; or

- any itemized estimates provided by architects or engineers for work to be conducted.

36.     On August 7, 2019, Middlesex again wrote to CMSD and raised certain issues regarding the POL. Specifically, Middlesex again noted that the damages claimed in the POL were unsupported; that the POL damages appeared to include significant costs that were unnecessary; that architect and engineer fees were excessive; that certain costs could not be evaluated until work was complete; that the POL did not include any damages for Business Personal Property; and the POL did not include an ACV amount. CMSD has not provided all of the requested information to support its claimed damages in the POL.

37.     In addition to the claim for building damages, CMSD also made claims for payment under the Extra Expense coverage in the Policy for re-location costs incurred exclusively as a result

9

of relocating the alternative school operations that were located in the damaged HAS Building ("Extra Expense claim")

38.     In total, CMSD claimed it incurred $208,273.41 through its Extra Expense claim, and that it expects to incur an additional $135,346.15.

39.     On April 30, 2019, Middlesex issued payment to CMSD in the amount of $100,000 for the Extra Expense claim, which represented exhaustion of the Indirect Loss Blanket Limit applicable to the Extra Expense coverage in the Policy.

40.     On November 11, 2019, CMSD disputed the application of the $100,000 Indirect Loss Blanket Limit to its Extra Expense claim, claiming it was entitled to additional limits because multiple buildings were damaged.  Middlesex rejected CMSD's claim for additional extra expenses beyond the single $100,000 Indirect Loss Blanket Limit applicable to the HAS Building because the limit applies on a per-building basis and all of the extra expenses claimed were incurred as a result of damage to only the HAS Building.

41.     To date, Middlesex has made payments to CMSD totaling $3,619,480.12  This amount includes the ACV for damage to the three buildings listed in the Policy as estimated by Middlesex, the $100,000 Indirect Loss Blanket Limit applicable to the Extra Expense claim, and Business Personal Property payments.

42.     Based on its POL, CMSD claims $14,071,460.92 in building damages.  The difference between CMSD's claimed building damage amount and Middlesex's RCV amount is $9,230,721.79.  In addition, upon information and belief, CMSD claims an additional $243,619.56 in additional re-location expenses related to the re-location of the alternative school from the HAS Building.

10

43.    CMSD is not entitled to any additional payments under the Indirect Loss Blanket Limit because Middlesex has exhausted the coverage limit under the Policy.

44.    CMSD is not entitled to any additional Building damage coverage, beyond the potential recovery of the deprecation holdback amount identified by Middlesex, because it has failed to substantiate its building damage claim made in the POL claim with the additional documents and information requested by Middlesex.

45.    CMSD is not entitled to coverage for any damage to the Museum Building because it is not covered under the Policy.

46.    An actual controversy exists concerning the nature and extent of Middlesex's obligations under the Policy, and Middlesex brings this action to resolve those issues.

## COUNT I - DECLARATORY JUDGMENT THAT CMSD IS NOT ENTITLED TO ANY ADDITIONAL COVERAGE UNDER THE INDIRECT LOSS BLANKET LIMIT

47.    Middlesex re-alleges and incorporates by reference the allegations contained in Paragraphs 1-46 as if fully set forth herein.

48.    The Policy contains an Indirect Loss Blanket Limit which contains a per-building coverage limit of $100,000.

49.    The Indirect Loss Blanket Limit limits the coverage provided for extra expenses incurred as a result of physical damage to Covered Property.

50.    All of CMSD's re-location expenses were related exclusively to the re-location of its alternative school, which was housed in only one of the damaged buildings, the HAS Building.

51.    Because the entirety of CMSD's  Extra Expense claim is made up of re-location expenses incurred as a result of the damage to the HAS Building only, a single, per-building $100,000 Indirect Loss Blanket limit applies to CMSD's Extra Expense claim.

11

52.     Middlesex paid the $100,000 Policy limit to CMSD.

53.     CMSD seeks at least an additional $200,000 under the Indirect Loss Blanket Limit.

54.     Because Middlesex has exhausted its applicable Policy limit, CMSD is not entitled to any additional payments under the Indirect Loss Blanket Limit.

WHEREFORE, PREMISES CONSIDERED, Middlesex requests the following relief:

(A)     That this Honorable Court take jurisdiction of this Petition;

(B)     That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment and other relief requested, and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)     That the process for this Honorable Court be issued to CMSD as provided by law and the rules of this Court and that CMSD be ordered to respond to this Petition within the time prescribed by law or, in the event of a failure to do so, suffer a decree *pro confesso*;

(D)     That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree the rights, duties, and obligations under the Policy;

(E)     That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree that Middlesex does not owe any additional payment under the Indirect Loss Blanket Limit; and

(F)     That, if Middlesex is mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which it may be entitled.

## COUNT II - DECLARATORY JUDGMENT THAT CMSD IS NOT ENTITLED TO ANY ADDITIONAL BUILDING COVERAGE

55.     Middlesex re-alleges and incorporates by reference the allegations contained in Paragraphs 1-54 as if fully set forth herein.

12

56.     Middlesex has issued payments for the ACV of the building damages to Covered Property in the amount of $3,272,447.20. Middlesex has evaluated the damages to the three buildings listed in the policy and identified the RCV of the damage as $4,833,198.21.

57.     CMSD claims $14,071,460.92 in building damages, a difference of $9,230,721.79 from Middlesex's RCV estimate.

58.     Middlesex requested that CMSD provide it with documentation, including but not limited to, detailed estimates, bids, contract, and other documents to support its $14,071,460.92 building damage claim.

59.     The documents and information requested were necessary and material to Middlesex's investigation and adjustment of the claim.

60.     CMSD has refused to provide any estimates, contracts, or bids to support its claim beyond a one-page "Preliminary Estimate" from its architect to support its claim for more than $14 million in building damages.

61.     CMSD failed to comply with the policy conditions.

62.     CMSD's failure precludes it from recovering any additional payments for damage to the three buildings identified in the Policy (other than incurred repair costs recoverable from the Depreciation Holdback amount) beyond the amounts contained in the Middlesex estimates ($3,272,447.20 in ACV and $4,833,198.21 in RCV).

63.     Because CMSD is not entitled to any further payments, Middlesex is relieved of its obligation to make any additional payments to CMSD (other than incurred repair costs recoverable from the Depreciation Holdback amount)

WHEREFORE, PREMISES CONSIDERED, Middlesex requests the following relief:

(A)      That this Honorable Court take jurisdiction of this Petition;

(B)      That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment and other relief requested, and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)      That the process for this Honorable Court be issued to CMSD as provided by law and the rules of this Court and that CMSD be ordered to respond to this Petition within the time prescribed by law or, in the event of a failure to do so, suffer a decree *pro confesso*;

(D)      That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree the rights, duties, and obligations under the Policy;

(E)      That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree that Middlesex does not owe any additional payment for the three covered buildings; and

(F)      That, if Middlesex is mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which it may be entitled.

## COUNT III - DECLARATORY JUDGMENT THAT THE MUSEUM BUILDING IS NOT COVERED UNDER THE POLICY

64.      Middlesex re-alleges and incorporates by reference the allegations contained in Paragraphs 1-63 as if fully set forth herein.

65.      The loss occurred at property located at 916 20th Street North, Columbus, Mississippi 39701-3826.

66.      The Policy covers three separate buildings at that location: a building housing an alternative school, and two buildings serving as storage locations.

67.      A fourth building is also located at the property – the Museum Building.

68.     CMSD claims that the Museum Building was also damaged, and seeks coverage for that claimed damage.

69.     The Museum Building is not covered under the Policy.

70.     Because the Museum Building is not covered, CMSD is not entitled to any payments for damage to the Museum Building.

WHEREFORE, PREMISES CONSIDERED, Middlesex requests the following relief:

(A)     That this Honorable Court take jurisdiction of this Petition;

(B)     That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment and other relief requested, and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)     That the process for this Honorable Court be issued to CMSD as provided by law and the rules of this Court and that CMSD be ordered to respond to this Petition within the time prescribed by law or, in the event of a failure to do so, suffer a decree *pro confesso*;

(D)     That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree the rights, duties, and obligations under the Policy;

(E)     That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree that the Museum Building is not covered under the Policy and that Middlesex does not owe any coverage for the Museum Building; and

(F)     That, if Middlesex is mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which it may be entitled.

Respectfully submitted,

s/Brenen G. Ely
_____
Brenen G. Ely (Bar # 105795)
Counsel for Middlesex Insurance Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
2100-B SouthBridge Parkway, Suite 380
Birmingham, Alabama 35209
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com

**DEFENDANT TO BE SERVED VIA PROCESS SERVER:**

Columbus Municipal School District
c/o Cherie Antoinette Labat
2630 McArthur Drive
Columbus, Mississippi 39705

16